## BROWNING v. GARVIN et al.

(Supreme Court, Appellate Division, First Department. February 9, 1900.)

1. LANDLORD AND TENANT—LEASE—TERMINATION BY LANDLORD—DELAY IN VACATING.

Where a landlord, who had the right to terminate the lease in case of damage by fire, exercised such right, and the tenant did not vacate for two or three weeks after the notice, and his delay materially delayed the repairing, the question whether such delay was unreasonable was for the jury.

2. SAME—DAMAGES.

Where a lease provided that the tenant should leave the premises in as good condition as at the commencement of the term, reasonable wear and damage by fire excepted, and the tenant, in removing heavy machinery therefrom after a fire, practically destroyed the floors, which could have been used again, and removed brick from the wall, and cut holes in the floor for the machinery, which could have been let down through a hatchway, the evidence of damages was sufficient to go to the jury.

Appeal from trial term, New York county.

Action by Therese D. Browning against Eugene E. Garvin and others. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, McLAUGHLIN, and INGRAHAM, JJ.

Clarence E. Thornall, for appellant.
R. M. Martin, for respondents.

McLAUGHLIN, J.  On February 4, 1889, one Jeremiah W. Dimick leased to the defendants, for a period of 15 years, the premises referred to in the complaint, at an annual rental of $10,000, payable monthly in advance, in pursuance of which the defendants went into and continued in possession until July, 1896.  In April, 1895, Dimick died intestate, leaving, him surviving, his widow, J. W. Dimick, and this plaintiff, his only heirs at law and next of kin.  Thereafter, the plaintiff acquired the·interest of the other parties therein, including their claim for damages alleged to have been done to the building in removing therefrom.  In March, 1896, a fire occurred, and the building upon the premises leased was damaged to an amount much in excess of $10,000, as estimated by certain insurance companies.  One of the provisions of the lease provided that, in case a fire occurred, and the building was damaged in excess of $10,000, as determined by insurance companies holding policies thereon, then, and in that event, Dimick, his representatives or assigns, should have the option to terminate the lease, if they so desired.  Under another provision of the lease the defendants covenanted that when they surrendered possession they would leave the premises "in as good a state and condition as the same" were "at the commencement of the term, reasonable wear and use thereof and damage by fire or elements excepted."  The plaintiff alleged in her complaint that the defendants unreasonably remained in possession of the premises after the fire, and after she had given them notice to quit and surrender the same, and that by reason thereof she sustained damage to an amount stated.  She also alleged that when the defendants did remove their property from the building they unnecessarily damaged the floors, stairs, and brickwork, for which she also claimed damages to an amount stated.  The defendants, in their answer, admitted the burning of the building at the time alleged, but denied that there was any unreasonable delay on their part in removing from the premises, or that they damaged the building in removing their property therefrom.  At the close of the plaintiff's case, the defendants moved to dismiss the complaint on the° ground, among others, that no damage had been proven.  The motion was granted, and judgment thereafter entered to that effect, from which the plaintiff has appealed.

In determining whether the trial court erred in the ruling thus made, the plaintiff, of course, is entitled to have the evidence construed in the most favorable light to her, and, unless it appears that she was not entitled to recover, after giving her the benefit of this rule, then the ruling was wrong, and the judgment must be reversed. McNally v. Insurance Co., 137 N. Y. 389, 33 N. E. 475.  There was no dispute between the parties, either as to the time the fire occurred, the damage to the building by reason of the fire, or plaintiff's right to terminate the lease.  Substantially the only dispute was whether there was an unreasonable delay in removing, and whether the floors, stairs, and walls of the building were unnecessarily injured. Upon this point one Browning testified that shortly after the 27th of May, 1896, as the agent of and representing the plaintiff, he made a contract with Richard Deeves & Son to repair the building;  that

when they commenced work under the contract there was then in the building a large quantity of iron and machinery of the defendants, and that he had several conversations in which he asked them to remove the same, and told them that their delay in doing so. was delaying the repairs; that one of the defendants in one of these conversations in substance offered to pay rent for the privilege of permitting the materials to remain, but that the witness informed him that the iron must be taken out of the building; that it was not removed for at least two weeks thereafter, and that some of it was not removed until the early part of July. Another witness testified that he had charge of the repairs, and that when he first went to the building—some time in June—there was then a large quantity of defendants' iron in the basement and on the first floor; that it remained there for two or three weeks after the contractor had commenced repairs, and that it delayed the work of repairing "materially." Other testimony was also given bearing upon the question of the defendants' delay in removing, but from that which we have referred to it seems clear that whether there was an unreasonable delay or not should have been submitted to the jury for its determination. When leased property becomes untenantable in consequence of fire, the tenant of course is entitled to a reasonable time in which to remove his property; and what is a reasonable time for that purpose generally is a question of fact, which should be submitted to the jury. Bassett v. Dean, 34 Hun, 250; Zimmer v. Black (Sup.) 14 N. Y. Supp. 107; Wallace v. Coe, 13 N. Y. St. Rep. 546. The jury, from the plaintiff's testimony, might have found that there was an unreasonable delay; and, if so, then she was entitled to recover the damages sustained by reason thereof. The proof was sufficient to form the basis of an award of damages in case of an unreasonable delay, and the jury could have estimated the damages by determining the length of the unreasonable delay.

As to the plaintiff's claim for damages to the building, caused by the defendants in removing their property, we think this also should have been submitted to the jury. One witness testified that before the defendants commenced to remove their property the floors of the building were in such a condition that they, or some of them, could have been used again; that the defendants, in removing, practically destroyed these floors, and also injured the stairs, and removed brick in one of the walls of the building, so that the machinery could be taken out; and that he had a conversation with one of the defendants, in which he called his attention to the fact that a portion of the brickwork around a certain window had been taken out, and also that the floors and stairways had been injured, and that the defendants agreed to replace the destroyed brickwork. Another witness described the manner in which the defendants removed some of their machinery and stated:

"In breaking up this material they broke it with sledge hammers, * * * such as you use in breaking cast iron,—20 to 25 pounds. Some of it they broke up on the floors. * * * These floors were in a condition that could be used afterwards, before they started the work of breaking up. After they got out, they were pretty badly damaged by pulling and rolling of this heavy machinery and breaking the machinery upon them. * * * In one or two

places they cut holes through the floor, and the machinery had been dropped through the ceiling to the first floor of the store. The floor and ceiling had been cut through, and they had dropped it right through, or hauled it right through. There was a hatchway, but the elevator was not in operation. They could have taken it through there just as well as through the floor. * * * I protested to the people doing it. We had no control over them. They continued to do what they wanted to do. They did not desist at all when I objected. * * * It might have been removed without this damage to the floors. With more labor and care, they could have saved the damage to the building."

Another witness testified that he saw the floors before the defendants removed their property and also afterwards, and he said, "It would cost $350 to put the floor in the condition between what it was when I first saw it and when I saw it after the machinery was removed," and, in regard to the injury to the wall, it would cost $25 to repair that. Another witness testified to substantially the same effect, and also gave an estimate of the damages done.

It is manifest from this testimony that the question should have been submitted to the jury to determine whether the building had been injured by the defendants, as stated by the witnesses. Upon both branches of the case, therefore, we are of the opinion that there was sufficient evidence to go to the jury, and that the learned trial justice erred in dismissing the complaint.

The judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.